## Case No. 12-5327

*Oral Argument Not Yet Scheduled*
_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

ROY A. DANIEL, *et al.*,

Appellants,

v.

ISAAC FULWOOD, Jr., Chairman of the United States Parole Commission, *et al.*,

Appellees.
_____

*On Appeal from the*
*United States District Court for the District of Columbia*
*(Hon. Ricardo Urbina and Hon. Richard Roberts, District Judges)*
_____

**INITIAL BRIEF OF APPELLANTS ROY A. DANIEL, *et al.***
_____

**Dentons US LLP**
Kenneth J. Pfaehler
Thomas R. Millar
1301 K Street, NW
Suite 600, East Tower
Washington, D.C. 20005
Tel:   (202) 408-6468
Fax:   (202) 408-6399
Email: kenneth.pfaehler@dentons.com

**Washington Lawyers' Committee for Civil Rights and Urban Affairs**
Deborah Golden
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
Tel:   (202) 319-1000
Fax:   (202) 319-1010
Email: deborah.golden@washlaw.org

**Attorneys for Appellants**

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

### A.    Parties and Amici

The parties who appeared before the district court in this class action were the plaintiff-petitioners Roy A. Daniel, Harold Venable, Percy Jeter, Abdus-Shahid Ali, Alfonso Taylor and William Terry, and the defendant Commissioners of the United States Parole Commission Isaac Fulwood, Jr., Cranston J. Mitchell and Patricia K. Cushwa.

The parties before this Court include appellants Percy Jeter, Abdus-Shahid Ali and William Terry.  The remaining named plaintiff-petitioners below were released from incarceration while the action has been pending.  The appellees are Commissioners of the United States Parole Commission Isaac Fulwood, Jr., Cranston J. Mitchell and Patricia K. Cushwa.

### B.    Rulings Under Review

Two rulings are under review on this appeal:

(1)  A September 30, 2011 Order and an accompanying September 30, 2011 Memorandum Opinion Granting the Defendant's Motion to Dismiss, entered by United States District Judge Ricardo M. Urbina, which are reproduced in the Appendix at pages A237-A263[1], and which is reported as *Daniel v. Fulwood*, 823 F. Supp. 2d 13 (D.D.C. 2011); and

---

[1] Citations to the accompanying Appendix are made in the form "A ___."

i

(2) A September 27, 2012 Memorandum Opinion and Order entered by United States District Judge Richard W. Roberts, which is reproduced in the Appendix at pages A298-A307, and which is reported as *Daniel v. Fulwood*, 893 F. Supp. 2d 42 (D.D.C. 2012).

### C.     Related Cases

This case has not previously been before this Court.  To our best present knowledge, there are no pending directly related cases.  Similar issues were presented to the Court, but not resolved, in *Phillips v. Fulwood*, 616 F.3d 577 (D.C. Cir. 2010).

Dated: September 11, 2013

<div style="margin-left:40%">

/s/ Kenneth J. Pfaehler
Kenneth J. Pfaehler
Counsel for Appellants

</div>

# Table of Contents

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

  A.  Parties and Amici ......................................................i

  B.  Parties and Amici ......................................................i

  C.  Related Cases ...........................................................ii

PERTINENT STATUTES AND REGULATIONS .............................. viii

STATEMENT OF JURISDICTION ........................................1

STATEMENT OF ISSUES ...............................................3

STATEMENT OF THE CASE, COURSE OF PROCEEDINGS AND
  DISPOSITION BELOW ............................................4

FACTUAL BACKGROUND...............................................5

SUMMARY OF ARGUMENT ..........................................15

ARGUMENT .........................................................19

I.  Standard of Review ..............................................19

II.  The Appellants State A Claim.....................................19

III.  The District Court Drew Inferences Against Appellants
   That Merit Reversal and Remand.................................26

IV.  The District Court Did Not Credit Appellants' Allegations
   Regarding the Significant Risk of Prolonged Incarceration and
   Drew Unreasonable and Impermissible Inferences......................31

CONCLUSION.......................................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Ashcroft v. Iqbal*,
      556 U.S. 662 (2009)...........................................................................16, 17, 21, 24

*ACLU Foundation of So. Cal. v. Barr*,
      952 F.2d 457 (D.C. Cir. 1991)...........................................................................19

*Blair-Bey v. Quick*,
      151 F.3d 1036 (D.C. Cir. 1998)....................................................................23, 24

*\*Brown v. Williamson*,
      314 Fed. App'x 492 (3d Cir. 2009) ...............................7, 16, 22, 23, 24, 25, 26

*Browning v. Clinton*,
      292 F.3d 235 (D.C. Cir. 2002)...........................................................................19

*California Dept. of Corrections v. Morales*,
      514 U.S. 499 (1995)...........................................................................................33

*Collins v. Youngblood*, 497 U.S. 37 (1990)...........................................................20

*Cosgrove v. Thornburgh*, 703 F. Supp. 995 (D.D.C. 1988) .....................................7

*\*Davis v. Henderson*,
      652 A.2d 634 (D.C. Cir. 1995).....................................7, 8, 16, 18, 22, 23, 24, 25

*Fletcher v. Reilly*,
      433 F.3d. 867 (D.C. Cir. 2006)......................................................20, 29, 30, 31

*\*Garner v. Jones*,
      529 U.S. 244 (2000).....................................................................20, 28, 30, 31, 33

*Hammond v. D.C. Record Ctr.*,
      593 F. Supp. 2d 244 (D.D.C. 2009)...............................................................21, 27

*Kowal v. MCI Commc'ns Corp.*,
      16 F.3d 1271 (D.C. Cir. 1994)............................................................................19

*Phillips v. Fulwood,* 616 F.3d 577 (D.C. Cir. 2010) .....................................ii, 22, 23

* Authorities upon which we chiefly rely are marked with asterisks.

*Puifory v. Reilly,*
    No. 3:08-CV-982, 2009 WL 839354 (M.D. Pa. Mar. 30, 2009)........7, 23, 25, 26

*Ranger v. Tenet,*
    274 F. Supp. 2d 1 (D.D.C. 2003).................................................................21

*Richardson v. Pa. Bd. of Probation & Parole,*
    423 F.3d 282 (3d Cir. 2005) ....................................................................23

*Sellmon v. Reilly,*
    551 F.Supp. 2d 66 (D.D.C. 2008)....................................10, 16, 24, 26

*Sparrow v. United Air Lines, Inc.,*
    216 F.3d 1111 (D.C. Cir. 2000)..............................................................17

*Taylor v. Reilly,*
    685 F.3d 1110 (D.C. Cir. 2012)..............................................................30

*United States v. Restrepo-Suares,*
    516 F. Supp. 2d 112 (D.D.C. 2007).................................................. 30-31

*Vila v. Inter-American Inv. Corp.,*
    570 F.3d 274 (D.C. Cir. 2009).......................................................19, 27

## STATUTES

U.S. Const., art. I, § 9, cl. 3.............................................................*passim*

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1294 ...............................................................................................1

28 U.S.C. § 1331 ...............................................................................................1

28 U.S.C. § 1343(a)(3).......................................................................................1

28 U.S.C. § 1343(a)(4).......................................................................................1

28 U.S.C. § 1343(b)(1) ......................................................................................1

D.C. Code § 24-204 (1967) .............................................................................32

D.C. Code § 24-404 (2001) ...............................................................................8

D.C. Code § 24-409 (2001) .............................................................................7

National Capital Revitalization and Self-Government Improvement Act,
   Pub. L. No. 105-33, § 11231, 111 Stat. 712, 745 (1997) ...............................9, 10

### REGULATIONS

28 C.F.R. § 2.20 (1990) ...............................................................................11

28 C.F.R. § 2.36 (1998) ...............................................................................16

28 C.F.R. § 2.70 (2000) ............................................................................4, 10

28 C.F.R. § 2.73 (2000) ...............................................................................12

28 C.F.R. § 2.80 (2000) .........................................................................*passim*

63 Fed. Reg. at 39,172 (July 21, 1998).........................................................12

63 Fed. Reg. 17771 (Apr. 10, 1998) .............................................................10

D.C. MUN. REGS. tit. 9, §§ 105.0, 105.1 (1972) .........................................*passim*

D.C. MUN. REGS. tit. 28, § 100 *et seq.*.........................................................10

D.C. MUN. REGS. tit. 28, 204.16-22 (1987).................................................*passim*

### RULES

Fed. R. App. P. 32(a)(1)..................................................................................1

Fed. R. App. P. 32(a)(5)..................................................................................1

Fed. R. App. P. 32(a)(6)..................................................................................1

Fed. R. App. P. 32(a)(7)(B)(iii) .....................................................................1

Fed. R. App. P. 32(a)(7)(C) ...........................................................................1

Fed. R. Civ. P. 12(b)(6) ................................................................1, 5, 17, 21

Fed. R. Civ. P. 59(e) .............................................................................1, 5, 6

# GLOSSARY

| | |
|---|---|
| 1972 Regulations | Parole regulations promulgated by the District of Columbia in 1972 and published in the District of Columbia Municipal Regulations, D.C. MUN. REGS. tit. 9, §§ 105.0 *et seq.* (1972). |
| 1987 Guidelines | Parole guidelines promulgated by the District of Columbia Board of Parole in 1985 and published in the District of Columbia Municipal Regulations in 1987, D.C. MUN. REGS. tit. 28, §§ 100 *et seq.* (1987). |
| 2000 Guidelines | Parole regulations promulgated by the United States Parole Commission and implemented in 2000, which are found in Title 28 of the Code of Federal Regulations, and which the United States Parole Commission has been applying to D.C. Code offenders who became eligible for parole after August 5, 1998, 28 C.F.R. §§ 2.70 *et seq.* (2000). |
| Board | The District of Columbia Board of Parole. |
| Commission | The United States Parole Commission. |

## PERTINENT STATUTES AND REGULATIONS

D.C. MUN. REGS. tit. 9, §§ 105.0 *et seq.* (1972) (the 1972 Regulations)

D.C. MUN. REGS. tit. 28, §§ 100 *et seq.* (1987) (the 1987 Guidelines)

28 C.F.R. §§ 2.70 *et seq.* (2000) (the 2000 Guidelines)

## STATEMENT OF JURISDICTION

The appellants seek to vindicate rights protected by the Ex Post Facto

Clause of Article I, Section 9 of the United States Constitution and federal law.

Accordingly, the District Court for the District of Columbia had jurisdiction

over this dispute based upon 28 U.S.C. §§ 1331 and 1343(a)(3), (a)(4) and

(b)(1).  (A18 ¶ 7).

The jurisdiction of this Court is founded on 28 U.S.C. § 1291 (the "courts

of appeals . . . shall have jurisdiction of appeals from all final decisions of the

district courts of the United States") and 28 U.S.C. § 1294.

On September 30, 2011, the United States District Court for the District of

Columbia, by District Judge Ricardo M. Urbina, entered an Order and an

accompanying Memorandum Opinion Granting the Defendant's Motion to

Dismiss, which dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)

all claims brought by the appellant class of incarcerated D.C. Code offenders.

(A237-263).  On October 28, 2011, the appellants moved pursuant to Federal

Rule of Civil Procedure 59(e) to alter or amend the district court's September 30

Order and Memorandum Opinion order.  (A264-278).  On September 27, 2012,

the district court, by United States District Judge Richard W. Roberts, entered a

Memorandum Opinion and Order that denying the appellants' Rule 59(e) motion

to reconsider.  (A298-307).  The Memorandum Opinion and Order constitutes a

final order that disposes of all the parties' claims.  Therefore on October 17, 2012, the appellants timely filed their notice of appeal from the district court's orders. (A308-309).

## STATEMENT OF ISSUES

1.  Did the district court commit reversible error when it refused to accept the appellants' plausible factual allegation that the 1987 Guidelines formalized the procedures under the 1972 Regulations, and thus are predicative of parole outcomes under the 1972 Regulations, when the plausibility of appellants' allegation is confirmed by decisions of the District of Columbia Court of Appeals, a panel of a United States Court of Appeals and a United States District Court?

2.  Did the district court commit reversible error by ignoring inferences that benefitted appellants, instead drawing an improper inference, in contradiction of the allegations of the complaint, that because the Commission has the general regulatory authority to grant parole to individuals below their guidelines range in unusual circumstances, it in fact does so in a manner applicable to the appellants?

3.  Did the district court commit reversible error when it refused to draw the reasonable inference that, because the 2000 Guidelines impose a substantive legal burden on the appellants that was not present under the 1972 Regulations, the appellants face significant risk of prolonged incarceration when their parole applications are reviewed under the 2000 Guidelines?

## STATEMENT OF THE CASE

On May 25, 2010, the appellants filed in the district court a 324 paragraph class action complaint alleging in detail how that they, and the class they represent, have been subjected to retroactively increased incarceration by the United States Parole Commission in violation of the Ex Post Facto Clause of the Constitution.  The class consists of persons currently incarcerated for violations of the District of Columbia Code committed before March 3, 1985, and whose first parole hearings occurred after August 5, 1998.  The complaint alleges in detail that the Commission has not conducted the parole hearings for this class pursuant to the 1972 District of Columbia Rules and Regulations on Granting Parole, which were in effect when the class members committed their offenses,[2] or using the policies, procedures and practices of the District of Columbia Parole Board in effect when the offenses were committed.  Rather the Commission continues to apply guidelines of its own devising, adopted fifteen years after the last offense allegedly committed by any of the plaintiffs, and adopted with the intention of changing the parole requirements for D.C. Code offenders.  This retroactive application of new law has significant increased the risk of prolonged incarceration for the appellants.[3]

---

[2] D.C. MUN. REGS. tit. 9, §§ 105.0 *et seq.* (1972).

[3] A17-18 ¶¶ 4-6; *c.f.* 28 C.F.R. § 2.70 *et seq.* (2000).

On September 27, 2010, the Commissioners moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint.  The district court did not hear oral argument.  On September 30, 2011 -- a full year after the motion was filed -- the district court issued an Order and a Memorandum Opinion Granting the Defendants' Motion to Dismiss.  (A237-263).  On October 28, 2011, appellants moved for reconsideration under Rule 59(e).  (A264-278).  Eleven more months passed.  On September 27, 2012, the case having been transferred to District Judge Richard Roberts upon Judge Urbina's retirement, the district court denied the Rule 59(e) motion.  (A298-307).  Appellants filed their notice of appeal on October 17, 2012.  (A308-309).

The appellee commissioners moved for summary affirmance on December 3, 2012.  By an April 3, 2013 *per curiam* order, the Court denied the motion.  Thereafter, the parties agreed to participate in the Court's mediation program, and engaged in settlement discussions with Circuit Mediator Michael A. Terry.  The mediation regrettably proved unsuccessful.

## FACTUAL BACKGROUND

The appellants and the class they represent were convicted of offenses against the District of Columbia that occurred on or before March 3, 1985.  (A16 ¶ 1).  Most of these convictions occurred when they were very young men.  (A16 ¶ 2).  Each has been serving his sentence for decades since.  (*Id.*).  While

in prison, they have substantially rehabilitated themselves, excelling in college-level courses, participating in extensive counseling and earning positive work reviews, among other things.[4]  They have been largely free of disciplinary infractions or have committed only the most minor offenses, often in the early years of their incarceration.[5]  Notwithstanding these significant achievements, they remain imprisoned long after they allege they would have been released under the parole regime administered by the D.C. Board of Parole.[6]

At the time the appellants committed their offenses, parole decisions for District of Columbia-sentenced prisoners were made by the Board.[7]  At that time, upon service of a person's minimum sentence, the Board considered six factors in making the determination whether the Board believed that there was a "reasonable probability" that an inmate could follow the law and not pose a threat to society, and thus be released on parole: (1) the offense, (2) any mitigating or aggravating circumstances related to the offense, (3) prior criminal history, (4) personal and social history, (5) institution experience, and (6)

---

[4] A16-17 ¶ 2; A61 ¶ 215; A62-63 ¶¶ 223-226; A67 ¶ 247; A68 ¶¶ 253-256; A73-74 ¶¶ 289-291.

[5] A16-17 ¶ 23; A61 ¶ 216; A69 ¶ 258; A74 ¶ 293.

[6] A17-18 ¶ 6; A62-64 ¶¶ 223-232; A65-69 ¶¶ 238-261; A70-75 ¶¶ 266-299; A75-76 ¶¶ 301-302.

[7] A17 ¶ 3; A21 ¶ 29.

community resources available to assist the prisoner upon parole. (D.C. MUN. REGS. Tit. 9, §§ 105.0, 105.1 (1972); A7-8 ¶ 34). The Board had discretion to determine the weight of the various factors. *Id.* Congress intended that the same parole standards would apply to D.C.-sentenced prisoners regardless of where they were incarcerated.[8]

In 1987, the Board adopted parole regulations introducing "salient factor scores." This point-based scoring system was implemented to formalize the manner in which the Board exercised its discretion. *Davis v. Henderson*, 652 A.2d 634, 636 (D.C. Cir. 1995). As the appellants alleged in their complaint, the 1987 Guidelines were not meant to change the law, but to articulate the practices, policies and procedures of the Board under the 1972 Regulations. (A23 ¶ 37). This allegation is more than plausible; at least three courts have reached the same conclusion.[9] With the 1987 Guidelines, the Board sought to "formalize the manner in which the Board exercises discretion conferred upon

---

[8] D.C. Code § 24-409 (2001)); *Cosgrove v. Thornburgh*, 703 F. Supp. 995, 1004 (D.D.C. 1988).

[9] *See Davis v. Henderson*, 652 A.2d 634, 636 (D.C. 1995); *Brown v. Williamson*, 314 Fed. App'x 492, 497 (3d Cir. 2009); *Puifory v. Reilly*, No. 3:08-CV-982, 2009 WL 839354, at ** 6-7 (M.D. Pa. Mar. 30, 2009).

it" under then D.C. Code § 24-404 by making "explicit those factors that will be considered in each individual case."[10]

A Statement of Policy and Procedures which, the Commissioners claim, accompanied the Board's Report on the Development of Paroling Policy Guidelines, reflects that the 1987 Guidelines were intended to formalize the exercise of discretion provided to the Parole Board under the 1972 Regulations. "The use of guidelines should be seen as an effort to make explicit those factors that will be considered in each individual case." (A120). The 1987 Guidelines were simply meant to make "*more explicit* the paroling policies of the Board of Parole." *Id.* (emphasis added).

Under the 1987 system, points were awarded in categories that reflected the enumerated factors under the previous guidelines. An inmate's total score determined his suitability for parole. The Board of Parole:

1.  assumed that the minimum sentence imposed by the sentencing judge satisfied a parole candidate's offense accountability and, therefore, did not consider, in determining the candidate's suitability for parole, whether the candidate had been punished enough for his offense;

2.  presumed that a parole candidate with a total point score at his or her initial parole hearing of two or less was suitable for parole and only ignored that presumption if "unusual circumstances" existed indicating that the parole candidate, if paroled, would not "live and

---

[10] *Davis*, 652 A.2d at 636.

8

             remain at liberty without violating the law" or that the candidate's "release was incompatible with the welfare of society;"

3.      presumed that a parole candidate with a total point score at his or her parole rehearings of three or less was suitable for parole and only ignored that presumption if "unusual circumstances" existed indicating that the parole candidate was not suitable for parole;

4.      only adjusted a parole candidate's point score upward at his or her initial parole hearing based on the candidate's negative institutional conduct if the conduct was (i) significant, *i.e.*, a Class I offense or two Class II offenses, and occurred in the three years prior to the candidate's hearing or (ii) involved murder, manslaughter, kidnapping, armed robbery, or first degree burglary;

5.      adjusted a parole candidate's point score downward at his parole hearing whenever the candidate demonstrated sustained program or work assignment achievement during the period before the parole hearing; and

6.      applied the criteria in the 1991 Policy Guideline to determine whether "unusual circumstances" justified a denial of parole despite the presumption of suitability established by a parole candidate's total point score.[11]

In 1997, Congress abolished the D.C. Board of Parole when it enacted the National Capital Revitalization and Self-Government Improvement Act.[12] The Revitalization Act directed the United States Parole Commission to conduct parole hearings for D.C. Code offenders "pursuant to the parole laws and regulations of the District of Columbia." (*Id.*). Since August 5, 1998, the

---

[11] D.C. MUN. REGS. tit. 28, §§ 204.16-22 (1987); A24-28 ¶¶ 41-53; A35 ¶ 84.

[12] Pub. L. No. 105-33, § 11231, 111 Stat. 712, 745 (1997).

Commission has conducted the hearings and decided the parole requests for all D.C. Code offenders.

For the class of D.C. Code offenders who became eligible for parole after August 5, 1998, and brought this suit, the Commission promulgated its own parole guidelines, found at 28 C.F.R. § 2.80 (the "2000 Guidelines").  The 2000 Guidelines were intended to lengthen the period of incarceration before parole for offenders whose crimes resulted in the death of a victim.  "The USPC justified its revisions [by] explaining that its research demonstrated that '[t]he point score system used by the D.C. Board of Parole ha[d] resulted in a high rate of upward departures from the guidelines based upon factors that should be included in the guidelines.'" *Sellmon*, 551 F. Supp. 2d at 72 (quoting 63 Fed. Reg. 17771, 17772 (Apr. 10, 1998)).  Unlike the 1987 Guidelines, in which an inmate's points dictated whether he was granted or denied parole, the current system uses an inmate's point score to determine the number of months an inmate should serve *beyond* his minimum sentence.  28 C.F.R. § 2.80(h).

The 2000 Guidelines departed from both the 1972 Regulations and the 1987 Guidelines by assigning uniform and rigid scoring procedures where agency discretion previously was paramount.  Under the 2000 Guidelines an inmate's total score is calculated by adding points in the categories of salient factor, current or prior violence, and death of victim.  § 2.80(f).  Salient factor

points reflect the inmate's perceived risk of recidivism and are awarded based on his age at the time of the offense and the number and nature of his previous offenses. 28 C.F.R. § 2.20. Violence points reflect the use of violence or a firearm in the current offense or in previous offenses. § 2.80(f). Death-of-victim points reflect murder and other specifically enumerated crimes involving a "high level" of violence, even if the victim survived. *Id*. After adding these points together, the inmate's base guideline range is calculated in months. § 2.80(h). This range may then be adjusted upward for disciplinary infractions while incarcerated, § 2.80(j), or downward for sustained "superior program achievement." § 2.80(k).

The 2000 Guidelines thus represent a significant substantive change in the law governing parole for District of Columbia offenders. Under the 2000 Guidelines, parole candidates who, like the class here, have committed a crime of violence resulting in the death of a victim, can *never* be presumed suitable for parole when they first become eligible (*i.e.*, after having served their minimum sentence). By contrast, under the Board's practices in place when their crimes were committed, such candidates could establish a presumption that they were suitable for parole after serving the minimum sentence imposed by the sentencing court.

11

Under the 2000 Guidelines, which use a parole candidate's "Base Point Score" to add a range of months to the candidate's parole eligibility period, the class members are presumed *unsuitable* for parole until they serve at least 18 to 24 months longer than their parole eligibility dates.[13]  Only if class members can meet a substantive legal burden of establishing their case as the "unusual circumstance" (a burden not present under the earlier parole rules) can they be paroled upon service of their minimum sentences.  While a parole candidate could have established a presumption that he or she was suitable for parole, or would have had no presumption applied, under the Board's 1987 Guidelines and pre-1987 practices, by contrast under the 2000 Guidelines the presumption is that candidates like the appellants are unsuitable for parole until after they serve a substantial additional period of time.[14]

The 1972 Regulations also gave greater weight to positive "institutional experience" factor than do the 2000 Guidelines.  (A36 ¶ 89).  By contrast, the 2000 Guidelines weigh disciplinary infractions more harshly than the 1972 Regulations and 1987 Guidelines.  (A36 ¶ 90; A38-40 ¶¶ 101-107).  Under the Board's 1987 Guidelines and pre-1987 practices, a parole candidate could have

---

[13] 28 C.F.R. § 2.73; 63 Fed. Reg. at 39,172 (July 21, 1998).

[14] Petitioners have pled that as a matter of practice the Commission does not depart downward from an inmate's guideline range.  (A32 ¶ 70; A36 ¶ 88; A37 ¶ 93).

12

one additional point added to the point score the Board used to determine parole suitability for disciplinary violations which, depending on the candidate's record, might not impact his or her suitability for parole.  Under the 2000 Guidelines all institutional disciplinary reports, regardless of materiality or vintage, are used to add a range of months to the period that a candidate must serve to be presumed eligible for parole.  (28 C.F.R. § 2.36 (1998)).  Also in contrast to the Board's 1987 Guidelines and pre-1987 practices, under the 2000 Guidelines disciplinary infractions translate directly into additional months of incarceration.  (A38-40 ¶¶ 102-107).

The 2000 Guidelines do not incorporate the criteria in the 1972 Regulations and 1987 Guidelines regarding circumstances unusual enough to warrant a departure from an offender's point score.  (A36 ¶ 91).

The 1972 Regulations considered the internal and external problems and difficulties that might have causally contributed to the commission of an offense, as well as any efforts by the parole applicant to overcome such problems and difficulties.  These factors are not considered under the 2000 Guidelines.

The 2000 Guidelines' scoring system emphasizes criminal history in lieu of the 1972 Regulations' facial emphasis on rehabilitation, physical and emotional health, and institutional experience and achievements. (A17 ¶ 4; A28-

13

32 ¶¶ 54-71; A36-42 ¶¶ 88-113).  The 2000 Guidelines emphasize different factors and are objectively harsher for the Plaintiffs and class than the 1972 Regulations in effect at the time of their offenses.  (A36-42 ¶¶ 87-113).  These differences shift the overall emphasis of the parole inquiry.

For each of the foregoing reasons, class members evaluated under the 2000 Guidelines, but who should have been evaluated under the 1972 Regulations, face a significant risk of a longer incarceration in violation of the Ex Post Facto Clause.  (A37 ¶ 92).  The application of the 2000 Guidelines at the parole hearings for each of the named appellants in fact has resulted in their continued incarceration long beyond the time they would have been restored to freedom under the 1972 Regulations.  In denying their requests for parole, the Commission calculated guidelines ranges years past their original parole eligibility dates.  (A59 ¶ 210; A65 ¶ 240, 241; A71-73 ¶¶ 276, 281-87).

The Commission rigidly applies the 2000 Guidelines, without using the discretion afforded under the 1972 Regulations.  Among other things, the Commission:

1.    presumed that the class members were unsuitable for parole at their initial parole hearings by adding a range of months (based on a "Base Point Score" that the Commission calculated) to their minimum sentences that had to be served to be presumed suitable for parole (A28-30 ¶¶ 54, 57-62);

2.    added a range of months to the class members' minimum sentences to be served in order to be presumed eligible for parole, putatively

14

to account for disciplinary infractions these plaintiffs received more than three years before their initial parole hearing, or for minor infractions (A28-31 ¶¶ 54, 65-66);

3.    unlike the 1987 Guidelines, did not reward class members for their sustained program and work assignment achievement (A28-31 ¶¶ 55-56, 63-66);

4.    denied the parole requests of class members because the appellees believed that their minimum sentences (even with the additional amount of time added using the "Base Point Score" and disciplinary reports) did not sufficiently punish them for their underlying offenses (A29-30 ¶¶ 57-62); and

5.    did not use their remaining discretion to adjust scores downward. (A28-32 ¶ 54, 68-70).

If the Commissioners had applied the 1972 Regulations, each of the appellants would have served shorter terms of incarceration than they are serving under the 2000 Guidelines.  (*See*, *e.g.*, A64 ¶ 232 (Jeter); A69 ¶ 259 (Ali); and A75 ¶ 299 (Terry)).

## SUMMARY OF ARGUMENT

The district court committed reversible error by failing, on a Rule 12(b)(6) motion, to accept appellants' allegations as true and by drawing inferences against the appellants.  To defeat the motion to dismiss, appellants had only to show that they had pled plausible "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."[15]  In particular, the appellants had to show factual content to support the conclusion that the Commission's application of the 2000 Guidelines instead of the 1972 Regulations poses a significant risk of lengthened incarceration.[16]

The appellants made this showing.  They relied in part on the 1987 Guidelines.  The D.C. Court of Appeals has held the 1987 Guidelines implemented no significant substantive changes to the existing parole law.[17] Rather than accept appellants' allegation that the 1987 Guidelines formalized practices under the 1972 Regulations, the district court concluded that the allegation was "too speculative" to accept for purposes of the motion.  (A249). But certainly an allegation that echoes a finding made by the District of Columbia Court of Appeals applying D.C. law, and that also was accepted by a panel of the United States Court of Appeals for the Third Circuit, passes muster under *Iqbal*.  At a minimum this allegation must be accepted as plausible and non-speculative at the pleading stage.  Had the district court accepted this allegation as true, the inference would have been inescapable that application of

---

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[16] *Sellmon v. Reilly*, 551 F. Supp. 2d 66 (D.D.C. 2008), found that an Ex Post Facto Clause violation results from applying the 2000 Guidelines instead of the 1987 Guidelines to inmates who committed crimes when those Guidelines were in force.  The Commission voluntarily dismissed its appeal of the *Sellmon* decision.

[17] *Davis v. Henderson*, 652 A.2d 634, 636 (D.C. 1995); *see also Brown v. Williamson*, 314 Fed. App'x 492, 497 (3d Cir. 2009).

the 2000 Guidelines imposes a significant risk of longer incarceration for the class.

The district court also erred when it drew inferences against the appellants.  For instance, the court refused to accept as true the appellants' allegation that the Commission does not exercise the discretion conferred upon it by the 2000 Guidelines to depart below the standard guidelines range in "unusual circumstances."  Instead, the court "presumed" that the Commission would depart below the guidelines range "where appropriate" and on that basis concluded it could not reliably compare the parole regimes at issue.  (A260-261).  The court could not make that "presumption" when deciding a Rule 12(b)(6) motion.  *Sparrow v. United Air Lines, Inc.*, 216 F. 3d 1111, 1113 (D.C. Cir. 2000).  Even if the court below were permitted to draw an adverse inference, however, it is not only entirely plausible that the Commission never finds "unusual circumstances" meriting a pre-guidelines range release for the class at issue here (inmates who committed a crime of violence resulting in death); it is what the complaint pleads, in detail.  If Mr. Jeter, Mr. Ali and Mr. Terry were not released early despite their exemplary records, a reasonable inference is that the Commission never finds "unusual circumstances" for offenders who committed crimes resulting in death.  Had the district court

17

properly drawn this inference, instead of improperly substituting its own "presumption" (based on no evidence), the motion to dismiss had to be denied.

The court below also committed reversible error when it failed to draw the reasonable inference that the new "unusual circumstances" hurdle imposed by the 2000 Guidelines significantly increases the likelihood of longer incarceration. To sidestep this inference, and in disregard of the allegations of the complaint (and finding in *Davis*) that the 1987 Guidelines codified the practices under the 1972 Regulations, the court below decided that there was unlimited discretion under the 1972 parole regime. (A256-260). Thus in the district court's opinion the new legal burdens do not matter because the appellants' incarceration might have been lengthened under the earlier regime, too. (*Id*.). The district court was not free to draw this inference against the non-moving appellants.

Properly accepting appellants' claims as true and giving the appellants the benefit of all inferences that can be derived from the facts alleged, the appellants have stated claims to relief for violations of the Ex Post Facto Clause. The appellants respectfully request the Court to reverse the orders of the district court, and remand for further proceedings.

18

## ARGUMENT

### I.     The Standard of Review.

In reviewing a Rule 12(b)(6) motion to dismiss, this Court must review the district court's dismissal *de novo*, accepting the complaint's factual allegations as true, and granting the appellants "the benefit of all inferences that can be derived from the facts alleged." *Vila v. Inter-American Inv. Corp.*, 570 F.3d 274, 284 (D.C. Cir. 2009), quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

"Rule 12(b)(6) is not a device for testing the truth of what is asserted or for determining whether a plaintiff has any evidence to back up what is in the complaint.  If a complaint's factual allegations, and the reasonable inferences derived from them, would support a legal theory entitling the plaintiff to some relief, a Rule 12(b)(6) motion should be denied." *ACLU Foundation of So. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991).

### II.    The Appellants State a Claim.

The Ex Post Facto Clause of the United States Constitution prohibits retroactive increases in punishment for a crime after its commission.[18]  The

---

[18] *See* U.S. Const. art. I, § 9, cl. 3; *Collins v. Youngblood*, 497 U.S. 37, 42-43 (1990).

Supreme Court has held that a retroactively applied parole regulation, guideline, or policy violates the Ex Post Facto Clause if it creates a "significant risk" of prolonging an inmate's incarceration beyond what it would have been under the rules in effect when the crime was committed.[19]

Determining whether the retroactive application of a new parole regime violates the Ex Post Facto Clause requires "a searching comparison" of the two parole regimes.[20]  A party may demonstrate "significant risk" in two ways: (1) by demonstrating facial distinctions between the old and new parole regimes; or (2) through evidence that the agency's discretionary implementation of the new policy results in a longer period of incarceration than under the earlier rule.[21]  In this Court, when considering "significant risk" of prolonging incarceration, "the controlling inquiry 'is one of practical effect.'"[22]

On the Rule 12(b)(6) motion, the appellants needed only to demonstrate that they have plausibly pled that the "practical effect" of the application of the 2000 Guidelines was a "substantial risk" of lengthier incarceration.  The appellants pled "factual content that allows the court to draw the reasonable

---

[19] *Garner v. Jones*, 529 U.S. 244, 255 (2000).

[20] *Fletcher v. Reilly*, 433 F.3d. 867, 879 (D.C. Cir. 2006).

[21] *See Garner*, 529 U.S. at 255.

[22] *Fletcher*, 433 F.3d at 877 (citation omitted).

20

inference that the defendant is liable for the misconduct alleged."[23] "The Court must treat the complaint's factual allegations -- including mixed questions of law and fact -- as true and draw all reasonable inferences therefrom in the plaintiff's favor."[24]

The district court's decision should be reversed because using the 1987 Guidelines to compare the 2000 Guidelines to the 1972 Regulations at the pleading stage is not unduly speculative or implausible. "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[25] Appellants pled that the 1987 Guidelines implemented and formalized procedures already being applied under the 1972 Regulations. Thus applying the 1987 Guidelines is a meaningful predictor for the outcome of parole determinations under the 1972 Regulations. (A23 ¶ 37; A33 ¶ 76). At a minimum this allegation is plausible because the District of Columbia Court of Appeals reached the same conclusion when interpreting D.C. law. The 1987 Guidelines "merely formalize the manner in which the Board exercises the

---

[23] *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009).

[24] *Hammond v. D.C. Record Ctr.*, 593 F. Supp. 2d 244, 246-47 (D.D.C. 2009); *Ranger v. Tenet*, 274 F. Supp. 2d 1, 8-10 (D.D.C. 2003).

[25] *Iqbal*, 556 U.S. at 678.

discretion conferred upon it" by the 1972 Regulations.[26]  Necessarily, then, the

1987 Guidelines did not implement significant substantive changes to the

Board's pre-1987 practices.  For purposes of ex post facto analysis at the

12(b)(6) stage, the two regimes can be understood to be substantively the same.

Discovery, when permitted, will determine if the allegation is borne out.

     For these reasons other federal courts have used the 1987 Guidelines to

determine at the summary disposition stage that 1970s offenders have stated a

claim for ex post facto violations when the U.S. Parole Commission utilized the

2000 Guidelines at their parole hearings.

> [W]e agree with *Brown* that the discrepancy between
> the guidelines constitutes more than conjecture that the
> 'practical effect of the [new guidelines] was to change
> the weight that [this particular factor[ was given in the
> parole calculation.'[27]

---

[26] 652 A.2d 634, 636 (D.C. 1995).

[27] *Brown v. Williamson*, 314 Fed. App'x 492, 497 (3d Cir. 2009), quoting *Richardson v. Pa. Bd. of Probation & Parole*, 423 F.3d 282, 289 (3d Cir. 2005); *Puifory v. Reilly*, 2009 WL 839354, at ** 6-7.  A substantially similar argument was presented to this Court by appellant Phillips in *Phillips v. Fulwood*, 616 F.3d 577, 579-80 (D.C. Cir. 2010).  The Court did not address the merits of this argument, finding instead that Mr. Phillips' ex post facto claim was moot for reasons not applicable here.  Mr. Phillips' incarceration was the result of the Commission's determination that his case constituted "unusual circumstances" meriting prolonged imprisonment above his guidelines range.  Thus, this Court reasoned, Mr. Phillips "remains in prison because the Commission departed upward from the guidelines." *Id.* at 582.  By contrast, the appellants are within their guidelines ranges.

The district court concluded that *Davis* is "not binding on this court with respect to the question of whether the retroactive application of the 1987 Guidelines violated the Ex Post Facto Clause." (A249 n.3). But the appellants do not contend that the district court (or this Court) is bound to follow *Davis* on a question of federal law; rather, appellants contend that their allegations that the 1987 Guidelines implemented and formalized procedures under the 1972 Regulations cannot be said to be implausible or unduly speculative when the Court of Appeals of the District of Columbia (and two other courts) have reached the same conclusion.

Moreover, this Court has previously deferred to the *Davis* court's interpretation, explaining that "*Davis* found no ex post facto violation because '[t]he new District of Columbia parole guidelines . . . merely formalize the manner in which the Board exercises the discretion conferred upon it by the governing provision in effect when Davis was sentenced.'"[28] The Court, of course, is "bound to follow interpretations of D.C. law by the D.C. Court of Appeals, and hence must defer to that court's ruling to the extent that it interprets D.C. law; for instance, we defer to the ruling that the D.C. parole

---

[28] *Blair-Bey v. Quick*, 151 F.3d 1036, 1049-50 (D.C. Cir. 1998).

guidelines 'merely formalize the manner in which the Board' exercises its discretion."[29]

The question here is whether the finding by the D.C. Court of Appeals in *Davis* demonstrates the plausibility of the appellants' allegation that the 1987 Guidelines are sufficiently predictive of the Board's parole decision-making under the 1972 Regulations for that allegation to pass muster under *Iqbal*. The appellants submit that it plainly does. Other federal courts, in decisions that while not binding are certainly persuasive, have agreed with appellants. Relying on *Davis*, a panel of the Third Circuit found that application of the 2000 Guidelines, rather than the D.C. parole standards in effect in 1978, was sufficient to state a claim under the Ex Post Facto Clause.[30] In *Brown v. Williamson*, a plaintiff convicted of murder in 1978 and sentenced in 1980 in the District of Columbia challenged denial of parole on the grounds that application of the 2000 Guidelines violated the Ex Post Facto Clause, because they "emphasize different factors and are objectively harsher for inmates in his shoes

---

[29] *Blair-Bey*, 151 F.3d at 1049-50. Erroneously citing to *Sellmon v. Reilly*, 551 F. Supp. 2d 66 (D.D.C. 2008), the district court held that "the *Davis* decision is not binding on federal courts with respect to the question of whether the retroactive application of the 1987 Regulations violated the Ex Post Facto Clause." (A34 at 5). But the appellants are relying on *Davis* to state a claim at the pleading stage, not to bind the district court to an interpretation of federal law.

[30] *See Brown v. Williamson*, 314 Fed. App'x at 497.

than the guidelines in effect at the time of his offense."[31]  The Third Circuit

relied on the 1987 Guidelines to vacate the denial of Mr. Brown's habeas

petition and to remand for discovery.[32]

     The Middle District of Pennsylvania also has found an ex post facto claim

to be stated in analogous circumstances.[33]  Mr. Puifory, sentenced to a term of

thirty years to life in 1978 for a murder committed in 1977, and with an

exemplary prison record (like appellants), filed a civil action alleging that

application of the 2000 Guidelines posed a substantial risk of prolonging his

incarceration.  In denying defendant's motion to dismiss, the court said that the

"appropriate comparison here is between the parole regime in effect in 1977 and

the one applied by the Commission."[34]  In that context, the Court held that it was

appropriate to consider the result under the 1987 Guidelines "for purposes of

determining whether the application of the 2000 Commission guidelines cause a

significant risk of prolonged incarceration."  *Id*.

---

[31] 314 Fed. App'x at 495.

[32] 314 Fed. App'x at 497 (citing, for what the court referred to as the "1978 guidelines," to D.C. MUN. REGS. tit. 9, § 105.1 (1972), the statute discussed herein as the 1972 Regulations).

[33] *Puifory v. Reilly*, No. 3:08-CV-982, 2009 WL 839345, at ** 6-7(M.D. Pa. Mar. 30, 2009).

[34] 2009 WL 839345, at *6 n.9.

Although the 1987 Guidelines were not in place when Mr. Brown and Mr. Puifory committed their offenses, the courts in their cases relied on the 1987 Guidelines to find that the plaintiffs had stated ex post facto claims for the application of the 2000 Guidelines.  For the same reasons, it cannot be said that appellants' allegation that the 1987 Guidelines reflect the actual implementation of the 1972 Regulations is speculative or implausible.  If that foundational allegation is accepted, the appellants have stated a claim that the 2000 Guidelines places them at "significant risk" of prolonged incarceration given the material, substantial differences between the 1987 D.C. parole regime and the 2000 U.S. parole regime.  These differences, after all, were the basis for the district court in *Sellmon* to conclude that offenders who had committed crimes between 1985 and 2000 suffered ex post facto violations when the Commission applied the 2000 Guidelines in their cases.[35]  Appellants respectfully submit that the decisions of the district court should be reversed, and the case remanded for further proceedings.

### III.   The District Court Drew Inferences Against the Appellants That Merit Reversal and Remand

The district court's failure to draw inferences in favor of the non-moving appellants, and the inferences it instead improperly drew against them, merit

---

[35] *Sellmon v. Reilly*, 551 F. Supp. 2d 66 (D.D.C. 2008).

26

reversal and remand.  The Court must treat the complaint's factual allegations,

including mixed questions of law and fact, as true, and draw all reasonable

inferences therefrom in the plaintiff's favor.[36]  In comparing the 1972

Regulations and 1987 Guidelines to the 2000 Guidelines, appellants pled that

although the Commission has authority to depart down from the guidelines

range under the 2000 Guidelines in "unusual circumstances," in practice it never

departs down.  (A32 ¶ 70).  In support, the appellants provided detailed accounts

of the named plaintiffs' parole histories.  Despite their exemplary records, *none*

of the named plaintiffs were deemed by the Commission to present "unusual

circumstances" meriting a downward departure.  (*Cf.* A42-75 ¶¶ 115-299).  If

their significant programming achievement, positive records and rehabilitation

were deemed by the Commission not to warrant a downward departure, a

reasonable inference, absent *any* evidence to the contrary, is that the

Commission never exercises its discretion to depart down.

　　　Yet the district court erroneously rejected this allegation and inference

and instead drew an adverse inference against the appellants.  The district court

reasoned that "because the 2000 Guidelines allow decisions resulting in parole

terminations that fall below or above the calculated guidelines, the court

---

[36] *Vila v. Inter-American Inv. Corp.*, 570 F.3d 274, 284 (D.C. Cir. 2009);
*Hammond v. D.C. Record Ctr.*, 593 F. Supp. 2d 244, 246-47 (D.D.C. 2009).

presumes that the Commission will use its discretion to depart from the guidelines where appropriate." (A260-261). The district court made this "presumption" on the basis that *Garner* requires it to "presume [that] the [Commission] follows its statutory commands and internal policies in fulfilling its obligations." (A260). The district court thus concluded that it could not infer a significant risk of prolonged incarceration from the allegations.

The district court's reliance on *Garner* for this proposition was misplaced. In the context of a motion for summary judgment, not a motion to dismiss, *Garner* stated that courts are to presume the Commission follows its statutory commands "*absent a demonstration to the contrary*."[37] At the motion to dismiss stage, the adequate demonstration to the contrary is the plausible factual allegation that the Commission does not depart downward, supported by the reasonable inference that if the Commission did depart downward, it would have done so for one of the exceptional inmates who were named as plaintiffs below.

The district court explained that as a result of its "presumption" that the Commission departs down in circumstances applicable to the class members, "the court agrees with the defendants that due to the extremely broad discretion that the Board possessed under the 1972 Regulations, there remains no

---

[37] *Garner*, 529 U.S. at 256 (emphasis added).

28

reasonably reliable method of comparing a particular defendant's incarceration period under the 1972 Regulations, as opposed to under the 2000 Guidelines." (A261).

But the district court's reasoning effectively means that where two parole regimes each contain any element of discretion, there can be no ex post facto violation when the latter regime is misapplied. This Court has rejected this contention in the past.[38] *Fletcher v. Reilly* involved an alleged ex post facto violation resulting from the application of later-adopted reparole guidelines.[39] Mr. Fletcher claimed that the new reparole guidelines did not consider rehabilitative factors that were considered under the earlier guidelines. 433 F.3d at 869. The Court explained that "the District Court was also under the misconception that since the D.C. Board exercised discretion in applying the federal parole/reparole regulations and the Commission exercises like discretion in applying the federal parole/reparole regulations, there could be no ex post facto violation." 433 F.3d at 876. To the contrary, even where discretion

---

[38] *Fletcher v. Reilly*, 433 F.3d 867, 874 (D.C. Cir. 2005),

[39] Appellants acknowledge that in finding a potential ex post facto violation in retroactive application of the current guidelines for reparole, this Court equated the current and 1987 guidelines for parole in terms of "rehabilitative focus." *Fletcher v. Reilly*, 433 F.3d 867, 869 (D.C. Cir. 2006). Because parole was not at issue in *Fletcher*, however, this Court had no reason to, and did not, engage in a detailed comparison between the 2000 Guidelines and the 1972 Regulations.

resided in the two regimes being compared, the Court concluded that Mr.
Fletcher had "offered a viable claim that there is a significant risk that his
punishment will be increased by virtue of the Commission's retroactive
application of the new federal regulations governing reparole."  433 F.3d at 879.
To hold otherwise would prevent a plaintiff from ever being able to state an ex
post facto claim after *Garner* on a "non-speculative" basis where the two laws
under comparison each contained an element of discretion.

    Moreover, in *Fletcher* the Court explained that discovery is appropriate to
flesh out claims of Ex Post Facto Clause violations.  Although in *Fletcher* "we
found 'facial distinctions' between the regulations that were potentially
significant for the petitioner's case, we held only that those distinctions were
'sufficient to warrant factual development . . . in order to determine whether'
application of the later regulations constituted an Ex Post Facto violation."[40]
That is all the appellants seek here, and the Court should reverse and remand to
afford them the same opportunity.

---

[40] *Taylor v. Reilly*, 685 F.3d 1110, 1115 (D.C. Cir. 2012).  The district court
also has interpreted *Garner* and *Fletcher* as "contemplat[ing] that discovery will
be necessary, at least in the parole context, to give the movant an opportunity to
obtain evidence regarding the practical implementation of the challenged
guideline."  *United States v. Restrepo-Suares*, 516 F. Supp. 2d 112, 118 n.4
(D.D.C. 2007) (citing *Garner*, 529 U.S. at 257, and *Fletcher*, 433 F.3d at 879).

**IV.    The District Court Did Not Credit Appellants' Allegations Regarding the Significant Risk of Prolonged Incarceration and Drew Unreasonable and Impermissible Adverse Inferences**

The district court committed reversible error when it inferred that the Board could have lengthened the appellants' sentences just as long as the automatic increase in their sentences as a result of the 2000 Guidelines. (A256-260). In contrast to the 1972 Regulations, the 2000 Guidelines impose additional substantive legal burdens that offenders whose crimes resulted in the death of the victim must satisfy to be paroled upon service of their minimum sentence, as the appellants have alleged.[41] The district court circumvented these allegations in two ways.

First, as we have explained, the district court impermissibly concluded that since the 2000 Guidelines confer discretion to release prisoners earlier than their guidelines range, and the district court assumed this was done "where appropriate," there is no identifiable risk of longer incarceration.

Second, the district court inferred that the D.C. Parole Board *might* in the exercise of its discretion have extended appellants' sentences under the 1972 Regulations for as long as the *automatic* sentences they received under 2000 Guidelines. (A249, A255, A261). Respectfully, this inference appears to be the quintessence of speculativeness. Beyond that, it is legally impermissible. Under

---

[41] A17 ¶ 4; A29-30 ¶¶ 57-62; A36 ¶ 88; A37-38 ¶¶ 93-100.

31

the 2000 Guidelines, the Commission *may not* exercise its discretion to grant

parole to an offender whose crime resulted in the death of a victim unless that

offender can surmount a substantive legal burden that did not exist under the

1972 Regulations, the requirement to demonstrate "unusual circumstances."[42]

By contrast, the 1972 Regulations afforded the Parole Board discretion to grant

parole once a person had served their minimum sentence, including offenders

whose crimes resulted in the death of a victim.[43]  The same is true for the 1987

Guidelines.  The 2000 Guidelines *withdraw that discretion from the Commission*

based on the nature of the underlying offense and only return it after the

Commission makes a substantive additional legal finding not previously

required.

    Therefore, as the appellants allege, the 2000 Guidelines impose a new

requirement that did not exist in 1972, which the plaintiffs and the class they

represent must satisfy before the parole reviewer may exercise discretion.[44]  For

these reasons, the 2000 Guidelines alter "the substantive formula used to

calculate" parole and therefore impose a significant risk of lengthened

_____

[42] 28 C.F.R. § 2.80(n)(1) (2000).

[43] *See* D.C. Mun. Regs. tit. 9 § 105.0 *et seq.* (1972); *see also* D.C. Code 24-204 (1967).

[44] *Compare* A22 ¶ 31 *with* A31 ¶67 (*comparing* D.C. Mun. Regs. tit. 9 § 105.0 *et seq.* (1972) *with* 28 C.F.R. § 2.80(n)(1) (2000)).

incarceration in violation of the Ex Post Facto Clause.[45]  A new substantive legal burden, not present in the earlier rules, by definition presents a significant risk of longer incarceration.  The district court erred by rejecting these plausible facts and drawing inference against the appellants.

### CONCLUSION

For all the foregoing reasons, the appellants respectfully request the Court to reverse the decision of the district court dismissing their claims, and remand for further proceedings.

Respectfully submitted,

DENTONS US LLP

/s/ Kenneth J. Pfaehler
Kenneth J. Pfaehler
Thomas R. Millar
1301 K Street, N.W.
Suite 600 East Tower
Washington, D.C. 20005-3364
202-408-3241
Fax: 202-408-6399
kenneth.pfaehler@dentons.com

*Attorneys for Appellants*

---

[45] *See Garner*, 529 U.S. at 255 (2000); *California Dept. of Corrections v. Morales*, 514 U.S. 499, 505-506 (1995).

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32, the under-

signed certifies that the foregoing Brief of Appellants contains 7,169 words,

excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and

Circuit Rule 32(a)(1).  This brief also complies with the typeface requirements

of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P.

32(a)(6) because it has been prepared using Microsoft Word 2010 in a

proportionally spaced, roman typeface (14-point Times New Roman).


/s/ Kenneth J. Pfaehler
Kenneth J. Pfaehler

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 11th day of September, 2013, he

caused the foregoing Brief of Petitioners to be filed using the Court's CM/ECF

System, which will serve notice of same upon counsel of record for Appellee

Commissioners of the United States Parole Commission via electronic mail:

> Alan Burch, Esq.
> Michelle Lo, Esq.
> Civil Division
> 555 4th Street, NW
> Washington, D.C. 20530
> (202) 514-513
> Fax: (202) 514-8780
> Michelle.Lo2@usdoj.gov

> Respectfully submitted,

> DENTONS US LLP

> /s/ Kenneth J. Pfaehler
> Kenneth J. Pfaehler
> Thomas R. Millar
> 1301 K Street, N.W.
> Suite 600 East Tower
> Washington, D.C. 20005-3364
> 202-408-3241
> Fax: 202-408-6399
> kenneth.pfaehler@dentons.com

> *Attorneys for Appellants*

80682248